IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Gregory L. Stewart,              )
                                 )
        Plaintiff,               )
                                 )
                                 )
        v.                       )        No. 24 C 3683
                                 )
                                 )
City of Chicago et al.,          )
                                 )
        Defendants.              )

Memorandum Opinion and Order

Defendants Samantha Surma and Matthew Wagner are officers in defendant the City of Chicago's police department. They stopped and frisked Gregory Stewart, finding an unlawfully carried firearm on his person. An Illinois court granted Stewart's motion to suppress the stop, after which his criminal case ended. Stewart then sued defendants pursuant to Section 1983 and Illinois law. Pending before me now is defendants' motion for summary judgment. For the reasons that follow, I grant that motion.

1

## I.

The parties agree on most of the operative facts, all of which I take in the light most favorable to Stewart, the non-moving party. *Tebbens v. Mushol*, 692 F.3d 807, 811 (7th Cir. 2012).

On May 11, 2023, at around 9:00 pm, Stewart was walking down West 16th Street in Chicago with his brother and two female friends. He was carrying a concealed firearm for which he had no concealed carry license.

At the same time, Surma, Wagner, and Officer David De La O, also of the Chicago Police Department, were in a squad car patrolling the area. The officers were on a "tactical team" conducting a "post-shooting mission." ECF 79 at 2–3. Their aim was to "attempt to deter any retaliatory shooting or any increased shooting or violence in the specific area." *Id.* at 3.

The parties dispute whether the officers simply drove up to Stewart and his companions or whether they drove by, did a U-turn, and then drove up to them. Regardless, De La O observed Stewart's brother looking at the officers and then moving to the other side of the sidewalk with his arm by his side. The brother "then attempted to conceal himself by moving behind" the other three people. *Id.* at 4. On those facts, De La O "believed that [the brother might] be possessing a firearm." *Id.* De La O, who was driving, then pulled the squad car into an alley in front of

2

Stewart and the others, cutting off their path forwards along the sidewalk. Stewart and his friends stopped walking, and Stewart raised his hands in the air.

The officers exited the car, and De La O immediately began patting down the brother. De La O found no contraband on the brother. De La O testified at his deposition that, as he was patting down the brother, he observed "in [Stewart's] left coat pocket, a large bulge, heavy weighted item that appeared to be swaying back and forth, a little heavy like it was weighted down." *Id.* at 5. Stewart points out that the video footage does not appear to depict a bulge or a swaying of the jacket "like it was weighted down." Surma Body Worn Camera ("BWC") at 2:00–2:05; De La O BWC at 2:04–2:10.[1] Based on "the area of high crime, high gang violence, based on the post-shooting mission regarding the recent homicide that had happened," De La O believed this object to be a firearm. He then began patting Stewart down.

De La O first patted Stewart's right coat pocket, instead of the one that he testified he had been looking at. De La O BWC at 2:04–2:10. He then patted Stewart's left coat pocket, testifying

---

[1] ECF 81 contains links to several BWC exhibits, including two videos each from Surma and De La O. The Surma video I am referring to is titled "Surma BWC 2026-02-18 08.27.50". The De La O video is titled "De La O, BWC 2026-18 08.27.50".

that, when he patted the pocket, he "felt an object that was consistent with the same shape and size of a firearm." ECF 79 at 6. De La O then attempted to reach into this pocket, at which point Stewart turned to run, tripped, and fell. The interval from the officers exiting their vehicle to Stewart turning to run was about twelve seconds. De La O BWC at 1:58–2:10. After Stewart fell, the three officers got on top of him and together handcuffed him. They recovered a firearm from Stewart's pocket. Shortly afterwards, Officer De La O asked Stewart whether he had either a Firearm Owner's Identification card or a concealed carry license; Stewart told De La O that he did not. De La O BWC at 3:10–3:15.

Stewart was ultimately charged with several firearms-related violations. He filed a motion to suppress the stop and the evidence recovered pursuant to it; the state court granted that motion, and his criminal case came to an end. He then filed this action. In Counts I and II, pursuant to 42 U.S.C. § 1983, he alleges that Surma and Wagner subjected him to an unreasonable seizure and an unreasonable search in violation of his rights under the Fourth Amendment. In Count III, he frames the same seizure as a false imprisonment under Illinois common law. And in Count IV, he alleges that Surma and Wagner battered him as they were seizing him. He names the City of Chicago in Counts III and IV through a theory of *respondeat superior*.

## II. Standard of Review

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (citations omitted). "Once a summary judgment motion is made and properly supported, the adverse party may not rest on the mere allegations of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Macklin v. Butler*, 553 F.2d 525, 528 (7th Cir. 1977). (citations omitted). I construe all facts in the light most favorable to the non-movant and draw all justifiable inferences in favor of that party. *Liberty Lobby,* 477 U.S. at 255.

### III. Discussion

### A. The Preliminaries

Stewart's response to the defendants' motion for summary judgment has narrowed the issues. He specifies that the seizure in

question in Count I is the initial stop, not his eventual arrest. He admits that after "the moment [he] attempted to run away," the officers had probable cause to arrest and search him.[2] ECF 78 at 6-7. As such, he concedes that I should grant defendants' motion as to Count II, which concerns his post-arrest search.

Stewart maintains that I should deny summary judgment as to Count IV, but the aforementioned concession decides the issue. Police can only batter someone in the course of an unlawful arrest; reasonable touching by police in the course of a lawful arrest is not tortious.[3] *See Schneider v. Town of Campbell*, 2017 WL 1032084, at *1, *8 (W.D. Wis. Mar. 15, 2017) (citing *Phillips v. Community Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012)). Stewart has conceded the lawfulness of his arrest and, given that neither Surma nor Wagner touched him until he was being arrested, those touchings cannot have been a battery. *Id.*; Surma BWC at 2:05-2:20.

---

[2] The exclusionary rule does not apply to civil lawsuits pursuant to Section 1983, so although any probable cause developed after an unlawful detention would be excluded in a criminal case, in this context, it would instead operate to make the interaction, for present purposes, lawful again. *Martin v. Marinez*, 934 F.3d 594, 599 (7th Cir. 2019).

[3] As long as the force used is not excessive; the use of unreasonably excessive force constitutes its own constitutional tort. *See Barnes v. Felix*, 605 U.S. 73, 79-80 (2025)

**B. The Stop**

What remains to be decided at Counts I and III is whether the officers subjected Stewart to an unlawful seizure; if so, whether they should be accorded the shelter of qualified immunity; and whether, even if illegal, the harm occasioned by the seizure was below the threshold that can sustain this case. Ultimately, I need not resolve any but the final issue because, even assuming that the stop was unlawful (and thus that the imprisonment in Count III was false)[4] and that qualified immunity does not apply, the damages that Stewart suffered were at best *de minimis.*

Defendants contend that because the illegal stop in question lasted only from the time that the officers drove their car in front of Stewart until Stewart turned to run, he could not have suffered many, or even any, cognizable damages. They cite *Dyson v. Village of Midlothian* for the proposition that "minor violations" of the Fourth Amendment, like unlawful traffic stops, "may be '*de minimis* deprivations of liberty' as the damages would be 'too

---

[4] As defendants note in their motion, Stewart's state law claim in Count III lives or dies with the claim about the stop in Count I. False imprisonment occurs when a defendant "cause[s] or procure[s] a restraint of the plaintiff without reasonable grounds to believe that the plaintiff was committing an offense." *Randall v. Lemke*, 726 N.E.2d 183, 186 (Ill. App. Ct. 2000). If I find, as I do below, that Stewart's damages in his 1983 claim are *de minimis*, I must also find that his damages in Count III, even if he was falsely imprisoned, were also *de minimis*.

slight to support the expense of suing.'" 2015 WL 778850, at *1, *7 (N.D. Ill. Feb. 18, 2015) (quoting *Ford v. Wilson*, 90 F.3d 245, 248 (7th Cir. 1996)).

One may disagree that a foot stop is or should be "an ordinary incident" of walking or that the fact that it is so quotidian should—as the court writes of traffic stops in *Ford*—function to partially excuse the intrusion into liberty that it presents to the citizen. 90 F.3d at 248. But here, there is simply not enough in the record to support a finding other than minimal or nonexistent harm.

Stewart has conceded that the unlawful element of the stop lasted no more than twelve seconds and ended before the more forceful portion of the encounter. And De La O's body-worn camera footage shows that the only thing which took place during those seconds was the first two pats of a patdown. The harm that Stewart suffered, if any, falls below the quantum necessary to support a lawsuit. *Ford*, 90 Fl.3d at 248; *Williams v. City of Champaign*, 524 F.3d 826, 829–30 (7th Cir. 2008) ("In any event, the brevity of the restraint defeats [plaintiff's] claim for damages, which is his only claim. He suffered no harm. Any increment of emotional distress could not have been significant...In constitutional tort cases (including cases brought to vindicate rights created by the

8

Fourth Amendment) as elsewhere in the law, *de minimis non curat lex*."). That finding resolves his claims in both Counts I and III.

**IV.**

Surma and Wagner are entitled to summary judgment. Because Stewart's claims against Chicago are derivative of his claims against the officers, it is entitled to summary judgment as well. As such, I grant defendants' motion in full.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge
Dated: May 15, 2026

9